HENRY L. STAEHLIN, PLAINTIFF-APPELLANT, v. WARD SMITH AND MRS. WARD SMITH, DEFENDANTS-RE-SPONDENTS.

Submitted October 28, 1932—Decided January 31, 1933.

For the plaintiff-appellant, *Cohn & Kohlreiter* (*Peter Cohn*, of counsel).

For the defendants-respondents, *Lewis Van Blarcom*.

The opinion of the court was delivered by

HEHER, J. This is an appeal from a judgment entered upon a nonsuit directed at the Circuit.

Plaintiff, a licensed real estate broker, sued to recover a commission claimed to be due for services rendered in negotiating the sale of real estate owned by defendants. He relied upon a promise contained in an agreement between the defendants and another, for the sale of the real estate in question, wherein the defendant Ward Smith agreed to pay plain-

tiff "his standard rate of commission on farm sales as stated in farm listing blanks as issued by this agency, on the purchase price aforesaid, said commission to be paid in consideration of services rendered in consummating this sale, said commission to be paid upon delivery of deed." A controversy arose between the parties to the agreement as to the acreage intended to be conveyed, and the sale was not consummated. This was one of the defenses interposed in the answer, but it seems not to have been pressed at the trial. The motion to nonsuit was based and allowed upon the single ground that the rate of commission on the dollar was not stated in the agreement. *Pamph. L.* 1918, *p.* 1020.

The sole ground for reversal argued by appellant is that the trial judge erroneously overruled appellant's offer in evidence of a paper designated "Farm Listing Blank." This paper was not signed by respondents. It was a mere mimeographed form, containing the authority to sell and fixing the rate of commission at five per cent. of the sales price, and constituting, when signed by the landowner, the contract between him and the broker. It is contended that this document was referred to in the contract upon which the action was based in such manner as to make it an integral part thereof, and that thereby the rate of commission was stated therein.

With this contention we cannot agree. The admissibility of the rejected document, as the one referred to in and thereby made a part of the contract, is urged upon two grounds. First, that it was a duplicate of a "farm listing blank" delivered by appellant to respondent when the former's services were first solicited; and second, that it was a "farm listing blank *issued*" by appellant, stating his "standard rate of commission on farm sales," referred to in the contract. Assuming its admissibility upon these grounds, neither was established by the proofs. There was no evidence tending to show that the offered document was a duplicate of the one delivered to respondents. The proofs show that a listing blank was mailed by appellant to respondents, and later another was delivered to respondents by appellant's agent. During the

progress of the trial, appellant demanded the production of the "listing blank" delivered to respondents. In compliance with this demand, a paper was produced by respondents' counsel, but it was not made a part of the record, and we are therefore not informed as to its contents. At the close of the case, appellant's counsel, for the first time, demanded the production of "a yellow paper that has blue printing on it, in which the rate of the commission is stated at five per cent." The trial judge ruled that there was not a timely demand for the production of the document, and no exception was taken thereto. There was a like failure of proof that the offered document was a copy of the farm listing blank "issued" by appellant at the time of the making of the contract, stating "his standard rate of commission on farm sales." Appellant testified that he had "three forms of listing blanks." He later said, referring to his listing forms, that he had "about a dozen different kinds." For aught that appeared, the rate of commission may have varied in these listing forms.

Appellant relies upon the doctrine stated in *Johnson & Miller* v. *Buck*, 35 *N. J. L.* 340, 344, but there the rule was declared to be that the statute of frauds will be satisfied if the terms of the contract "can be gathered from two or more detached papers, if the signed memorandum contains such reference to the other papers as to make the latter part of the former. The connection between the signed and the unsigned papers cannot be made by parol evidence that they were actually intended by the parties to be read together, or of facts and circumstances from which such intention may be inferred. The connection between them must appear by internal evidence derived from the signed memorandum." Tested by that rule, the trial judge's ruling was correct.

The judgment below will be affirmed.

*For affirmance*—THE CHANCELLOR, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, BROGAN, HEHER, HETFIELD, WELLS, KERNEY, JJ. 12.

*For reversal*—None.